# In the United States Court of Federal Claims

No. 10-396C

(Filed: February 15, 2011)

```
*******************************  *
                                 *
                                 *
DGR ASSOCIATES, INC.,            *
                                 *
                                 *
                   Plaintiff,    *
v.                               *
                                 *
THE UNITED STATES,               *
                                 *
                                 *
                   Defendant,    *
and                              *
                                 *
GENERAL TRADES & SERVICES, INC., *
                                 *
                                 *
          Defendant-Intervenor.  *
                                 *
*******************************  *
```

Equal Access to Justice Act, 28 U.S.C. § 2412(d) (2006); Award of Plaintiff's Attorneys' Fees, Costs, and Expenses; Government's Underlying Litigation Position Not Substantially Justified; Cost of Living Adjustment to Statutory Cap.

*Darcy V. Hennessy*, with whom was *Leslie A. Boe*, Hennessy and Boe, P.A., Mission, Kansas, for Plaintiff.

*Steven M. Mager*, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Patricia M. McCarthy*, Assistant Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., *Christopher S. Cole*, Department of the Air Force, and *David A. Fishman*, Small Business Administration, Of Counsel, for Defendant.

*Wayne A. Keup*, Wayne A. Keup, PLLC, Washington, D.C., for Defendant-Intervenor.

OPINION AND ORDER

WHEELER, Judge.

Plaintiff, DGR Associates, Inc. (DGR), seeks $37,402.72 in attorneys' fees, costs, and expenses from Defendant pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d) (2006). DGR prevailed in its bid protest against the United States Air

Force, showing that, in a procurement for housing maintenance, inspection, and repair services at Eielson Air Force Base, Alaska, the Air Force violated the Small Business Act, 15 U.S.C. § 657a(b)(2)(B) (2006), by not giving a priority to HUBZone small business concerns.  The Court issued an injunction requiring the Air Force to terminate an unlawfully awarded contract, and to apply the statutory HUBZone preference in a new or revised solicitation.  <u>DGR Associates, Inc. v. United States</u>, 94 Fed. Cl. 189 (2010).

DGR's claim for attorneys' fees consists of 211 hours incurred during June through October 2010, charged at an hourly rate of $175.  The attorneys who represented DGR in this matter are Darcy Hennessy and Leslie Boe, the principals in the law firm of Hennessy and Boe, P.A., in Mission, Kansas.  The costs and expenses consist of the Court's $350 filing fee, and Federal Express charges of $127.72 to file and serve pleadings at the beginning of the case.

The EAJA provides that, when a timely application is filed, an eligible prevailing party shall be awarded attorneys' fees and other expenses incurred by that party in any civil action brought by or against the United States "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).  A statutory cap of $125 per hour applies, unless the Court determines that an increase is warranted for a cost of living adjustment, or that a "special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A). Defendant opposes DGR's request, arguing that the Government's underlying litigation position was substantially justified, or alternatively, that any recovery should be limited to the statutory cap.

For the reasons explained below, DGR is eligible for an award under the EAJA. The Court concludes that Defendant's position in the underlying litigation was not substantially justified.  Therefore, the Court awards DGR $37,227.72 in attorneys' fees, costs, and expenses, comprised of attorneys' fees for 210 hours at an hourly rate of $175, and $477.72 in costs and expenses.  The Court has disallowed one hour incurred by DGR's counsel in addressing the Defendant-Intervenor's position.  The Court increased the statutory cap of $125 per hour for an appropriate cost of living adjustment of $50.27. However, the Court must limit DGR's recovery to the hourly rate actually charged, $175.

<u>The Equal Access to Justice Act</u>

To be eligible for award under the EAJA, five conditions must be met: (1) the fee application must be submitted to the Court within 30 days of final judgment in the action and be supported by an itemized statement; (2) at the time the civil action was initiated, the applicant, if a corporation, must not have been valued at more than $7,000,000 in net worth or employed more than 500 employees; (3) the applicant must have been the "prevailing party" in a civil action brought by or against the United States; (4) the

Government's position must not have been "substantially justified;" and (5) there cannot exist any special circumstances that would make an award unjust.   28 U.S.C. § 2412(d)(1)(A), (B); Id. § 2412(d)(2)(B); see Comm'r, Immigration & Naturalization Serv. v. Jean, 496 U.S. 154, 158 (1990); United Partition Sys., Inc. v. United States, 95 Fed. Cl. 42, 49 (2010).

Discussion

The contested issues in this EAJA application are whether Defendant's underlying litigation position was substantially justified, and whether DGR should recover an hourly attorneys' fee rate that exceeds the statutory cap of $125.  The Court will address each of the EAJA requirements below to assure that they are met.

A.  DGR Timely Filed Its EAJA Application.

As noted, a fee application under the EAJA must be submitted to the Court within 30 days of final judgment in the action and be supported by an itemized statement.  28 U.S.C. § 2412(d)(1)(B).  The term "final judgment" means "a judgment that is final and not appealable."  28 U.S.C. § 2412(d)(2)(G).  In this case, the Court issued a final judgment on August 13, 2010, and Defendant's 60-day appeal period expired on October 12, 2010.  Defendant did not appeal the Court's decision.  On November 8, 2010, DGR filed a motion for leave to file under seal its EAJA application for attorneys' fees and costs.  In the application and exhibits accompanying this motion, DGR submitted the necessary information and supporting documents.  Therefore, DGR timely filed its complete EAJA fee application within the statutory period.

B.  DGR Is Eligible for an EAJA Award.

At the time that DGR filed its civil action against the United States, DGR's net worth was less than $7,000,000 and DGR employed less than 500 people.  See 28 U.S.C. § 2412(d)(2)(B); (Pl.'s Mot. Exhibit A, Nov. 8, 2010.).  Defendant does not dispute that DGR is eligible to recover attorneys' fees and expenses under the EAJA.  (Def.'s Resp. 17, Jan. 6, 2011.)

C.  DGR Was the Prevailing Party in the Underlying Litigation.

DGR prevailed on all of its arguments that the Air Force should have applied the statutory preference for HUBZone small business concerns.   The Court issued an injunction requiring the Air Force to comply with the Small Business Act, 15 U.S.C. § 657a(b)(2)(B).  DGR also overcame Defendant's affirmative defense that the Court lacked jurisdiction due to DGR's failure to file a judicial action prior to the closing date for receipt of proposals.  DGR Associates, 94 Fed. Cl. at 200-04.  Defendant does not

contest that DGR was the prevailing party for EAJA purposes.  (Def.'s Resp. 19, Jan. 6, 2011.)

> D. Defendant's Position Was Not Substantially Justified in the Underlying Litigation.

The Government bears the burden of showing that its position was substantially justified.  See Infiniti Info. Solutions, LLC. v. United States, 94 Fed. Cl. 740, 748 (2010) (citing White v. Nicholson, 412 F.3d 1314, 1315 (Fed. Cir. 2005)).  The substantial justification inquiry determines whether the Government's position was "'justified in substance or in the main' –that is, justified to the degree that would satisfy a reasonable person."  Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citations omitted).  The Government's overall position "both prior to and during the litigation" must have a reasonable basis in both law and fact.  United Partition Sys., 95 Fed. Cl. at 50 (citing Chiu v. United States, 948 F.2d 711, 715 (Fed. Cir. 1991) and Blakley v. United States, 593 F.3d 1337, 1341 (Fed. Cir. 2010)).  The key inquiry is "not what the law now is, but what the Government was substantially justified in believing it to have been."  Loomis v. United States, 74 Fed. Cl. 350, 355 (2006) (quoting Pierce, 487 U.S. at 561).  The Court must determine whether the Government was reasonable in bringing about and continuing the litigation at hand.

The mere fact that the Government did not prevail is not dispositive of the substantial justification inquiry.  Schock v. United States, 254 F.3d 1, 5 (1st Cir. 2001).  Whether one court agreed or disagreed with the Government does not establish whether the Government's position was not substantiality justified, although "a string of court decisions going either way can be indicative."  Id. (citing Pierce, 487 U.S. at 568).

Defendant essentially presented two arguments in the underlying litigation to show why DGR's judicial bid protest should fail: (1) DGR waived its right to bring suit in this Court by not filing its action prior to the closing date for receipt of proposals; and (2) under the Small Business Act and applicable regulations, as interpreted by at least three executive agencies, the Air Force was not required to give priority to HUBZone small business concerns.  The Court will address both of these arguments below.

> 1. Waiver of Right to Bring Suit in This Court

As explained in the prior opinion, DGR Associates, 94 Fed. Cl. at 200-04, the Court found Defendant's waiver argument to be patently unreasonable.  When DGR first saw that the Air Force's solicitation did not include a preference for eligible HUBZone offerors, DGR challenged the solicitation, first by letter to the contracting officer, and then by filing a formal agency-level protest.  DGR took both of these actions prior to the closing date for receipt of proposals.  The Court noted that DGR's letter and agency protest were "in compliance with [Federal Acquisition Regulation (FAR)], 48 C.F.R. §

33.103," and that by taking these actions, DGR was "adhering to the federal government's stated policy of attempting to resolve protests at the contracting officer and agency level." Id. at 202.

When the Air Force denied DGR's agency-level protest, DGR timely initiated a protest at the Government Accountability Office (GAO) within ten days of adverse agency action. By this time, proposals had been submitted, and the Air Force had decided to proceed with the procurement. DGR prevailed in its GAO protest, DGR Associates, Inc., B-402494, 2010 CPD ¶ 115 (Comp. Gen. May 14, 2010), but the Air Force declined to follow GAO's decision. The GAO awarded DGR its fees and costs of pursuing the protest, but the Air Force refused to consider DGR's request. Thereafter, DGR filed suit in this Court, only to be faced with Defendant's argument that DGR waived its right to sue by failing to commence an action before the closing date for receipt of proposals, citing Blue & Gold Fleet L.P. v. United States, 492 F.3d 1308 (Fed. Cir. 2007).

In denying Defendant's waiver defense, the Court stated that DGR "diligently pursued its solicitation challenge," and "[a]t each step, . . . followed applicable FAR and GAO protest procedures." DGR Associates, 94 Fed. Cl. at 202. The Court observed that Defendant's waiver argument "would be directly at odds with government policy to seek resolution of protests within the agency." Id. at 203. Following Defendant's argument "would have parties running into the Court of Federal Claims to challenge solicitation errors, instead of pursuing other available avenues of relief." Id. The Court ultimately ruled:

> The correct interpretation of Blue & Gold Fleet is that, if a party has challenged a solicitation impropriety before the close of the bidding process, the party is not precluded from later filing its protest at the Court of Federal Claims. A party must do something before the closing date to preserve its rights, and must thereafter pursue its position in a timely manner.

Id. The Court noted the gross inequity of Defendant's argument as it would apply to DGR:

> The Court hardly can conceive of a greater injustice than to say to DGR "even though you followed applicable protest procedures and prevailed at the GAO, now you are out of luck because you failed to file a judicial action in the Court of Federal Claims before the close of the bidding process."

Id. The Court continued by stating "Defendant's added insult to DGR would be that 'the Air Force has decided not to follow the GAO's decision in your favor, and there is

nothing you can do to prevent it.'" Id. By any measure, Defendant's waiver argument was patently unreasonable, and not substantially justified.

## 2. Statutory Preference for the HUBZone Small Business Program

Defendant's second argument, that under the Small Business Act and implementing regulations, the Air Force was not required to give priority to HUBZone small business concerns, contradicted the plain meaning of the Small Business Act. Defendant asserts that the interpretation of the statute was a novel issue, and thus its position was substantially justified. (Def.'s Resp. 19-20, Jan. 6, 2011.) However, the Court concludes otherwise, that the interpretation of the HUBZone statutory language was not novel. Due to the unambiguous wording of the statute, and the existing case law precedent, Defendant's position in the underlying litigation was not reasonable.

When DGR filed suit in this Court for declaratory and injunctive relief on June 28, 2010, multiple courts and the GAO uniformly had held that the Small Business Act was unambiguous, and that the HUBZone program should be given a preference over other small business programs. Contract Mgmt., Inc. v. Rumsfeld, 434 F.3d 1145, 1147 (9th Cir. 2006) ("The HUBZone Program, by contrast, commands in unequivocal terms that a contract opportunity be designated as a HUBZone set-aside when certain criteria are met."); Contract Mgmt., Inc. v. Rumsfeld, 291 F.Supp.2d 1166, 1174 (D.Haw. 2003) ("Congress has used clear language to mandate, 'notwithstanding any other provision of law,' the award of contract opportunities on the basis of competition restricted to qualified HUBZone small business concerns when certain, specific criteria are met."); Mission Critical Solutions v. United States, 91 Fed. Cl. 386, 402-03 (2010) ("[T]he statutory language is mandatory and that the plain meaning of the HUBZone statute requires a contract opportunity to be competed among qualified HUBZone small business concerns whenever the specified criteria are met, notwithstanding other provisions of law – including those found within the Small Business Act itself."); Small Business Administration Reconsideration, B-401057.2, 2009 CPD ¶ 148 at 6 (Comp. Gen. July 6, 2009) ("[B]oth the appellate court and district court ultimately concluded, in no uncertain terms, that the HUBZone statute mandates a set-aside, while the statutory language authorizing the 8(a) program is discretionary."); Mission Critical Solutions, B-401057, 2009 CPD ¶ 193 at 3 (Comp. Gen. May 4, 2009) ("We do not think that SBA's regulatory implementation of the HUBZone and 8(a) statutes is reasonable since it fails to give effect to the mandatory language of the HUBZone statute."). Confronted with this line of unwavering authorities, the Court does not find it reasonable that Defendant would continue to litigate this issue.

Furthermore, Defendant's position did not have a reasonable basis in law, as the HUBZone statutory language was unambiguous. The GAO "read the plain language of the HUBZone statute as requiring an agency to set aside an acquisition for competition restricted to qualified HUBZone small business concerns where it has a reasonable

expectation" that the two pre-conditions of the HUBZone statute would be satisfied. DGR Associates Inc., B-402494, 2010 CPD ¶ 115 (Comp. Gen. May 14, 2010). If the Air Force simply had elected to follow the GAO's decision, DGR's lawsuit would not have been necessary. However, the Air Force rejected the GAO's decision, forcing DGR to pursue further litigation in this Court. Given the clear statutory language, Defendant was unreasonable in putting DGR to additional effort and expense. The Court's analysis of the Small Business Act's HUBZone program found no room for debate. DGR Associates, 94 Fed. Cl. at 208 ("[T]he Court finds the plain language of the HUBZone provision to establish the priority of the HUBZone program over the 8(a) program."). The Court examined the legislative history to see whether a "clear intent contrary to the plain meaning exists." Id. (citation omitted). The legislative history was unpersuasive, offering no explanation of why the Senate omitted the parity provision from the HUBZone program, making the Defendant's reasoning as to Congress's intent "purely speculative." Id. at 209. Due to the plain language of the statute and the lack of any contrary Congressional intent expressed in the legislative history, Defendant's position was unreasonable.

For all of the foregoing reasons, the Court concludes for purposes of DGR's attorneys' fees application that Defendant's arguments in the underlying litigation were not substantially justified. 28 U.S.C. § 2412(d)(1)(A).

<u>Calculation of Attorneys' Fees, Costs, and Expenses</u>

The EAJA allows recovery of attorneys' fees, costs, and expenses with certain limitations. DGR seeks to recover $175 per hour, $50 per hour more than the statutory cap. (Pl.'s Reply to Def.'s Resp. 4, Jan. 27, 2011; Pl.'s Appl. and Mot. 2, Dec. 7, 2010.) Defendant objects to DGR's request for any payment in excess of the statutory cap. (Def.'s Resp. 2, Jan. 6, 2011.) In the alternative, DGR seeks a cost of living adjustment (COLA) as allowed by the EAJA. (Pl.'s Reply to Def.'s Resp. 4, Jan. 27, 2011.) DGR and Defendant agree that DGR should not recover attorneys' fees for time spent responding to the Defendant-Intervenor. (Pl.'s Reply to Def.'s Resp. 4, Jan. 27, 2011; Def.'s Resp. 30-31, Jan. 6, 2011.) Finally, Defendant did not raise any objection regarding the $477.72 that DGR claims for costs and expenses.

A $125 per hour cap applies to attorneys' fees under the EAJA, "unless the court determines that an increase in the cost of living or a special factor, such as limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." ACE Constructors, Inc. v. United States, 81 Fed. Cl. 161, 168 (2008) (citing 28 U.S.C. 2412(d)(2)(A)(ii)). The specialized knowledge or skill of an attorney only justifies an enhanced award when the knowledge or skill is "an identifiable practice specialty such as patent law, or knowledge of a foreign law or language." Pierce, 487 U.S. at 572. The Court of Federal Claims consistently has declined to hold that "expertise in government contracts law per se satisfies the EAJA special factor requirement." Cal. Marine

Cleaning, Inc. v. United States, 43 Fed. Cl. 724, 733 (1999) (citing Prowest Diversified, Inc. v. United States, 40 Fed. Cl. 879, 889 (1998) and Esprit Corp., Inc. v. United States, 15 Cl. Ct. 491, 494 (1988)); see, e.g., Infiniti Info. Solutions, 94 Fed. Cl. at 751 ("A government-contract case does not require the kind of specialized knowledge or skill that would justify an enhanced award.").   Therefore, DGR's request for an enhanced fee of $175 per hour is denied.

As an alternative to an enhanced fee, DGR requested a COLA adjustment.   (Pl.'s Reply to Def.'s Resp. 4, Jan. 27, 2011.)   The EAJA allows for the $125 statutory cap to be exceeded if "the court determines that an increase in the cost of living . . . justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A)(ii).   COLA adjustments should be freely granted. United Partition Sys., 95 Fed. Cl. at 58 (citing Baker v. Bowen, 839 F.2d 1075, 1084 (5th Cir. 1988)).   The Court finds that increases in the cost of living justify a COLA adjustment for DGR's attorneys' fees.

The Court calculates the increase by using a mid-point inflation adjustment method.  The Federal Circuit endorsed the use "in an appropriate case, [of] a single mid-point inflation adjustment factor applicable to services performed before and after the mid-point," and the Court of Federal Claims often has determined COLA adjustments by using the mid-point inflation adjustment.   See Chiu, 948 F.2d at 722, n. 10; see, e.g., United Partition Sys., 95 Fed. Cl. at 58 (using a mid-point adjustment factor); Geo-Seis Helicopters, Inc. v. United States, 79 Fed. Cl. 74, 79 (2007) (endorsing a single mid-point adjustment factor); Cal. Marine Cleaning, 43 Fed. Cl. at 734 (citing with approval the use of a mid-point adjustment factor).  The mid-point inflation adjustment is calculated by using the Consumer Price Index (CPI) compiled by the United States Department of Labor,  Bureau of Labor Statistics, in the following formula: (statutory cap) X (mid-point CPI) / (baseline CPI).   See United Partition Sys., 95 Fed. Cl. at 58 (citing Lion Raisins, Inc. v. United States, 57 Fed. Cl. 505, 519-20 n.19 (2003)).

The effective date of the statutory cap is the baseline used in calculating COLA adjustments.  Lion Raisins, 57 Fed. Cl. at 519 (citing Doty v. United States, 71 F.3d 384, 387 (Fed. Cir. 1995)).   In March 1996, Congress amended the EAJA to increase the hourly attorneys' fee rate from $75 to $125.   28 U.S.C. § 2412(d)(1)(D)(2)(A)(ii). Therefore, March 1996 is the proper baseline.  The CPI in March 1996 is 155.70.

The endpoint of the COLA calculation is the date the services were rendered. Lion Raisins, 57 Fed. Cl. at 519 (citing Chiu, 948 F.2d at 722).  The mid-point inflation adjustment factor applicable to services performed before and after the mid-point is the month that lies at the mid-point between the first and last month for which attorneys' fees are being awarded.  In this case, where fees were incurred during June through October 2010, August 2010 is the mid-point of the range for which the Court is awarding DGR its attorneys' fees.  The CPI in August 2010 is 218.312.

Using the mid-point inflation adjustment formula, the COLA adjustment for DGR's attorneys' fees is $175.27 per hour.[1]

Although the statutory cap plus the COLA adjustment provides for recovery of attorneys' fees at a rate of $175.27 per hour, DGR is only entitled to recover $175 per hour, the actual hourly rate that DGR's attorneys billed. (Pl.'s Appl. and Mot. 6, Dec. 7, 2010.) An attorneys' fee rate awarded to an EAJA applicant should not exceed the rate actually billed. See, e.g., Greenhill v. United States, No. 07-854C, 2011 WL 294505 at *12 (Fed. Cl. Jan. 31, 2011) (capping attorneys' fees at $150 per hour even though the COLA rate would have provided a higher hourly rate because $150 was the rate actually billed); Carmichael v. United States, 70 Fed. Cl. 81, 86 (2006) (same). Therefore, the maximum that DGR can recover for attorneys' fees is $175 per hour.

The Court has determined that DGR is eligible to receive the COLA-adjusted rate for 210 hours. DGR originally requested $175 per hour for 211 hours (for a total of $36,925). (Pl.'s Appl. and Mot. 2, Dec. 7, 2010.) Defendant objected to one hour of the 211 hours because DGR's attorneys were responding to the intervention of General Trade & Service's Inc. (GT&S), the intervenor. (Def.'s Resp. 2, Jan. 6, 2011.) DGR conceded that it was not entitled to attorneys' fees for work performed in response to GT&S's intervention, and withdrew its attorneys' fees request for one hour. (Pl.'s Reply to Def.'s Resp. 4, Jan. 27, 2011.)

The Court concludes that DGR may recover attorneys' fees for 210 hours at $175 per hour, for a total of $36,750. Costs and expenses of $477.72 also may be recovered, bringing DGR's total EAJA award to $37,227.72. The Court does not find, and Defendant has not claimed, that there are any special circumstances that would make an award unjust.

<u>Conclusion</u>

The Court GRANTS DGR's application for attorneys' fees, costs, and expenses under the EAJA. The Court awards DGR $36,750 for attorneys' fees, and $477.72 for costs and expenses, for a total of $37,227.72. The clerk shall enter judgment for DGR in the amount of $37,227.72.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge

---

[1] (Statutory Cap) X (Mid-Point CPI)/(Baseline CPI) = 125.00 X (218.312)/(155.70) = 175.266538.